Good morning, Honorable Justices. Thanks for your time this morning. My name is Aaron Gunzick, and I'm here to represent the appellant in this matter. The district court's decision should be reversed primarily for two reasons. The district court failed to give my client leave to amend the complaint that was filed in this matter in violation of Rule 15a. And furthermore, in violation of several decisions of this Court, the district court failed to state any reason or rationale for its decision to dismiss the complaint with prejudice without leave to amend. To begin with, Rule 15a is pretty clear. It provides that a party may amend its pleading once as a matter of right before a response of pleading is served. In this case, just let me give a short procedural history of what happened in this case. This matter was initially filed in the probate court in Los Angeles County in mid-January of 2005. It was removed less than 30 days later to the district court. Immediately thereafter, the defendant moved to transfer the case to New York or to dismiss the case. A motion to transfer and a motion to remand was heard by the district court on April 4th. At that point, the court ruled without any argument from counsel, no discussion whatsoever, no discussion of the court's reasonings. The court decided to deny the motion to remand and deny the motion to transfer. At that point, the district court said that it was not aware that there had or actually, the district court said that it had not prepared for the motion to dismiss that the defendants had filed, and so it took that matter under submission. Once again, there was no discussion about the motion, no argument by counsel, and approximately two weeks later, the district court issued an order essentially saying the matter is dismissed with prejudice without leave to amend. No discussion, no rationale for the decision was given. This circuit has made clear that the filing of a motion to dismiss does not constitute a response of pleading under Rule 15a. And so the district court dismissed the case without giving my client an opportunity to amend its pleading in violation of its rights under Rule 15a. Furthermore --" Kennedy, do you think that Rule 15a requires a district judge to give a right to amend where he's got a situation where it's totally frivolous? Well, I think, Your Honor, that the language of the statute is very clear. The cases have suggested, and I would have to say that they're not all on all fours with each other, but the cases have suggested that when there is a completely frivolous claim, for example, in the wages versus IRS case that the appellees cite, that in that kind of circumstance that perhaps it's okay not to give leave to amend. But I would add that in the wages case, the Court had an amended pleading in front of it and looked at the amended pleading and said, well, there really is not much more here than there was in the first and the original complaint. And so in that circumstance, the Court determined that it was appropriate, that the district court's decision not to grant leave to amend was appropriate. When you were greeted with this motion to dismiss, did you get a chance to file a responsive paper, I don't care what, brief, affidavit? Your Honor, I wasn't able to. Proposed the amended complaint? Your Honor, I was not the lawyer in the trial court, but, yes, my client was given an opportunity to obviously file an opposition to the motion to dismiss and file the motion to remand at the same time. And did not proffer any particular amended pleading, but the law in the Ninth Circuit is also clear on that. In fact, the plaintiff does not even have to ask the Court for leave to amend in order for the Court to still have an obligation to grant leave to amend, at least once before the responsive pleading is filed. If you had to state what went wrong here, how would you state it? Well, I guess I would state — I would say there are three things, Your Honor. First of all, the case was filed as a probate matter in the probate department of the superior court. And in that situation, the kinds of claims that would be initially brought are sort of — are somewhat limited. And so once the case was removed to the district court and then became, I guess, a more general sort of civil matter, there was no — the appellant or the plaintiff should have had an opportunity to amend its complaint to assert nonprobate causes of action, for example, breach of contract. The second thing that I think happened here, Your Honor, is that — is that the district court provided absolutely no rationale, no discussion, no reason whatsoever in violation of this Court's precedent in deciding — in putting precedent. Well, the precedent may not be as you'd like, because if it's obvious from the record that there's no basis, the Court doesn't have to say anything, does it? That — the — there are cases which suggest that, Your Honor, and I don't dispute that. But what the cases say is that if it's obvious from the record, if it's obvious from the arguments raised by appellant, then — by the other side, then it's appropriate. But in this case, for example, the issue of whether or not it was appropriate — whether or not a breach of contract claim could have been stated was not before the Court in any way. The court — the district court didn't consider it, couldn't have considered it. The — there was no discussion of it in any pleading or any — any motion or moving paper in front of the district court. So — so in that situation, in this situation, there was no record upon which to make that determination that an amendment would have been futile in this case. For example, in the — in the eminence capital case, eminence v. Aspion, the Court didn't even consider whether or not the proposed amendment — what the proposed amendment would have been, what the facts would have been, what the new cause of action might have been, but went on to say that in this — that — that because the district court provided no rationale other than to say, you know, you're not entitled to more than three bites at the apple, that that was — that that lack of rationale justified a reversal of district court's decision to — to dismiss without leave to amend. And in that situation, Your Honor, there was a — I think there was a third or fourth amendment complaint in question. The same thing was at issue in D.C.D., another case which — which this Court has applied this provision. In D.C.D., they were talking about the third or fourth amended complaint. And in that situation, once again, the Court said there's no rationale provided by the district court. In that kind of a situation, reversal is appropriate. This Court — this Court has said that again and again and again. And — and in this particular situation, there was no rationale provided by — by Judge Reel below. There was nothing in the order. There was nothing in the colloquy with counsel. It was just a dismissal without leave to amend. And it occurred within a very short period of time. There was no opportunity to take any discovery. There was no opportunity to develop any facts further in order to obtain — to — to present additional causes of action and to obtain evidence that might have been more supportive of causes of action or additional facts. Well, assume with me that you included the — the deed and the — the other documents in the probate action, which I think you did. Yes, Your Honor. So all of those were before the Court. Were there any other documents that you didn't give the Court? Well, the Court didn't have copies of the — the documents, the deeds that preceded the 1926 agreement that was attached to the probate court. There was a — there was an agreement from — of 1925 and an agreement of 1921. But I assume you're not relying upon those agreements because you — it's the last agreement which superseded all the rest, correct? Well, the last agreement did supersede it, but the other agreements may well — they provide color for what the — the rationale behind the 1926 agreement. And, of course, there was no basis — there was no opportunity to bring that information into the record for — for this appeal. And — and into the district court because there was no opportunity to — to — to amend the complaint. The — the appellee has argued, of course, that — that an amendment of — that the dismissal is appropriate without leave to amend because amendment of the complaint would have been futile. And as we pointed out in our — in our briefs, Your Honors, the — the — we could have stated the causes of action for breach of contract. We also believe that a cause of action for breach of trust was — was appropriate. The — the appellee relies on Johnson and a line of other cases in the California — California cases which, to argue that the breach of contract claim would not be or would have been futile, to argue that — that the kind of perpetual obligation that we would have asserted in a breach of contract claim is not — could not be enforced. And those cases are all distinguishable on the basis of the fact that they are all real estate-related cases. In those situations, the — the courts in California were looking at those — at those contracts and — and trying to determine whether or not, based upon a failure to comply with a — with allegedly perpetual provision, the real estate issue would have to be deeded back to the original grantor. This situation is different because we're not asking necessarily for that to have — that what we're — what the contract claim would assert is that the — that the appellee has an obligation to comply with its promise in the 1926 agreement, which was to maintain the school and operate it. And they breached that. And that — that promise was in perpetuity. Well, I don't know. I can't say, Your Honor, that it was or was not in perpetuity because there is no factual record upon which to make that determination. Well, is that what the contract says? Well, the contract says operate the — operate the school, continue to operate the school. Seventy-five years is not enough to say in perpetuity. I can guarantee you that. But it's a long time. It's a long time, Your Honor. I agree. But the fact that they continue to operate it suggests that they understood that they had an obligation to do that as well. And I think that if — if we were enabled to take discovery, we would be able to determine whether or — or introduce — make other allegations about the contract. We would be able to introduce — potentially introduce facts concerning what the meaning of the contract was. In this situation, the judge, the district court, dismissed the complaint without leave to amend, without giving any consideration to what extrinsic evidence might have been there to explain the meaning of the contract, to explain the — the — what the appellee has described as provisions that are contradictory, the one giving the property to the — to the appellee and the other install — providing or putting an obligation on the appellee to continue to do certain things. And that language must have some significance, must have some meaning. And it's our position that it at least has a contract — it creates a contractual obligation upon the appellee. And we weren't able to develop that theory or to even allege the theory in a complaint. Thank you. Your Honor, I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Eric Lewis, and I represent the Armenian General Benevolent Union, the AGBU. For over a century, the AGBU has been the preeminent charitable organization devoted to the welfare of the Armenian people worldwide. This dispute involves one of the AGBU's many projects, the Melkonian Institute. It was founded in Nicosia, Cyprus, in the wake of the Armenian massacres in the 1920s to provide residential education for Armenian orphans. After 80 years of continuous operation, the Melkonian Institute was closed because the board of the AGBU took the decision that the need to provide education for Armenian orphans had thankfully waned, and its funds could be better spent at other educational institutions and projects. This led to objections from the alumni of the school, a great deal of local unhappiness in Cyprus, and ultimately to this lawsuit. As Your Honors have noted, this case turns on the interpretation of a single document, the deed of gift executed in 1926 in Egypt by Mr. Melkonian, the patriarch, and the predecessor of the AGBU, the UGAB, which at that time was incorporated in Switzerland. The document itself couldn't be clearer in its purpose of releasing any and all conditions on the transfer of this property, leaving the AGBU free to do as it pleases. I'm sure Your Honors are familiar with the document, but just to quote one part of the many portions of the document that indicate this clear intent, it leaves the AGBU absolutely free to do as it pleases with the properties that were given and transferred to it by retaining the property or by alienating it, and freeing it completely from all oversight, control, conditions, restrictions, or obligations whatsoever in the management or alienation of the said properties. Now, the grovelment of the case here is that despite that release of all conditions or obligations, in fact, there is an obligation, there is a condition, a perpetual obligation to run this school forever. We haven't had a specific time frame, but Plaintiff, that appellant has cited no case, and we are familiar with no case, where after 80 years of running a school, even if that were a contractual obligation, after 80 years, that hasn't been fulfilled. We thought it was clear beyond paradventure that the record indicated there was no transfer of trust here. All of the indicia that would indicate a trust were absent. There was no separation of legal and beneficial title. The deed explicitly gave the AGBU the right to commingle the properties, the right to alienate the properties. The AGBU was plainly the beneficiary here. It would be hard to conceive of a document that could make any clearer an intention not to create a trust. And indeed, the purpose of the 1926 deed, as is clear from its text, is to eliminate any restrictions from earlier deeds that might be construed as creating a trust arrangement. So whether this claim sounds in trust or in equitable charge or in charitable trust or in contract, we would submit that there is no claim under this deed because the construction of a clear document would preclude it. We would note that it was never contended in the court below by appellants that the document was ambiguous. This document was submitted. It was asserted it created a trust. It was for the court to decide it as a matter of law. On appeal with new counsel, we have new arguments including that there might be some hypothetical extrinsic evidence. Mr. Gunzick referenced the previous deeds. But as Your Honors will know from reviewing the deed, the 1926 deed recites the terms, the pertinent terms of the earlier deeds. With respect to the dismissal without leave to amend, at the hearing before the district court, the district court gave counsel the opportunity to make any arguments that they chose to. Counsel chose not to amplify on the briefing, which was extensive. In the briefing, it was a probate petition, and the argument was made by appellant that the case should not be dismissed because there are additional theories, and they argued equitable charge and they argued charitable trust. We responded at length to those and said there is no equitable charge here, there's no underlying debt, there is no charitable trust here, and in any event, the Patriot lacks standing to enforce a charitable trust. Only the Attorney General can enforce a charitable trust except with respect to limited circumstances here. So we see this case as on all fours with Roth v. Garcia Marquez, a Ninth Circuit case which we cited in our brief, where the district court could see on the face of the document that was submitted as the operative document that it absolutely precluded the relief that was sought. In that case, a movie producer had made an agreement or purported agreement with the author, Gabriel Garcia Marquez, and said this is our contract, I want to enforce it, and the court could look at that document, and the circuit court did, and said it doesn't create any enforceable rights. So the dismissal without leave to amend was correct because amendment would be futile. And it's quite well recognized in cases cited in our brief, the Roth case, the Albrecht case, the Wages case, as well as in certain cases cited by appellant, that where it is apparent on the record that amendment would be futile, there is no reason to think that the need to give leave to amend, and there is no need, no requirement that an opinion be written. The point that's made here by appellant is that a contract claim, that would be the fourth theory. We had trust, we had equitable charge, we had charitable trust, and now, sometime later, the contract claim comes in. We should be allowed to amend to assert a contract claim. We would argue, Your Honors, that the contract claim would be just as futile as any of the other claims, and it suffers from the same defects. The deed gives AGBU the absolute and unconditional right to sell or dispose of the property, to operate it or not operate it, without any conditions or obligations whatsoever. Petitioner's argument that AGBU had a perpetual contractual obligation to maintain a school on that property is absolutely inconsistent with the terms of the deed. The language, simple personal obligation we would submit can be read in only one way under the familiar principles of construction under California law, and that is precatory. This problem has arisen in numerous cases, usually in the context of a will, an absolute gift is given, and then there is later language, which is less clear, which says – which suggests a possible limitation or modification. We've cited the Kearns estate case, the McGiverns estate case, the Sargovacs estate case, which demonstrate exactly how the courts resolve these claims. Transfers in fee simple are not restricted by later language that sets out the purpose for the gift or the expectation of the donor where the gift, by its terms, is unconditional in fee simple. But even if a contractual – it could be seen as a contractual claim, there's no contractual right here. If there was an obligation to run the school created by contract, it's been fully discharged. The deed does not say perpetual. It does not use terms that signal such an obligation, like permanent or always. It says maintain a school. And there are – there's extensive case law, both in California and from the Supreme Court, that deal with these sorts of agreements, most notably in the Texas and Pacific Railway case v. Marshall, where there was a permanent obligation to run a railway terminus in Marshall, Texas. And after eight years, the railway abandoned the terminal because it decided to put the railway elsewhere. And the Supreme Court indicated first that it was concerned that a perpetual obligation may be violative of public policy. But in any event, permanent did not mean perpetual, and eight years was enough. So that – and there is extensive authority. The O.T. Johnson case, the Hanson case, the Hanson case, the Hansman case, which deals with a school, and in the Hansman case, they ran a school for 29 years, and the obligation to maintain the school was noted as less important than a – less significant than a permanent obligation. Permanent means more than maintenance, and permanent doesn't mean perpetual. And there's extensive authority, both in California and elsewhere, that note how unusual a perpetual condition is. And in the Nissen v. Stovall Wilcoxon case … Kennedy, you've listed all these cases, haven't you, in your brief? We have, Your Honor. Okay. Then there's no need to go through them one by one, I don't think. Okay. Then we'll move on. Even if the Court could construe this as an obligation enforceable in contract after 80 years of operating this school for orphans in Cyprus, that obligation is discharged. In addition, the patriarch would lack standing to bring a contract claim because he has suffered no damage. Now, the patriarch suggests that he might have to start his own school. The school's been closed for two years now. The patriarch … Wait a minute. I thought the patriarch was supposed to get 1,500 Egyptian gold pounds or something like that per year. The patriarch is supposed to get – there are two grants, one of 1,000 and 500. It's Egyptian pounds. 500 Egyptian pounds is $87 a year. And the patriarch said he may not have had all of the payments. And if that was what this case was about, I think it could be resolved very easily. The patriarch has been paid well more than that, which I think is why it was artfully pleaded as he doesn't know whether he's been paid, he's received some, he's not sure of all. He received – was paid in pounds sterling. The pounds sterling has appreciated over the Egyptian pound over 80 years to a very great degree. And if that were the claim which were asserted in some court, not Federal court, that is a case that would be easily resolved. But I don't think that's the argument that's been made here. That's the only provision which says perpetual. 500 pounds a year, that's $87. Kennedy, you filed a brief that tells us pretty much what you want us to know. Is there anything that you need to tell us that you didn't tell us in that brief? The only thing that we did – didn't say in the brief came in – there were two 28-J letters that we filed with the court. One was to notify the court of analogous, if not identical, proceedings in Cyprus. And we just brought that decision to the court's attention so that it understood the procedural context. And the Lively v. Wildoats case which resolved the issue that had then been unresolved as to whether the – in a diversity case where the parties are diverse, but there's arguably a forum defendant, and the Lively v. Wildoats markets made clear that it did not affect this Court's jurisdiction, but instead was only a procedural case. And that's the only thing that we're not in the brief, Your Honor, and if Your Honor's had no further questions, I would thank you. Thank you. Larry Buddle. Let me begin by discussing the contract issue. The appellee cited the Texas and Pacific Railway cases and another line of cases for the proposition that the language of the deed which requires the AGBU to maintain the orphanage can't possibly mean anything in perpetuity, and it must mean that they have satisfied their obligation to maintain it. I guess this line of cases is distinguishable, as I mentioned before, because they deal with real estate and reversion of real estate back to the grantor. And in those situations, courts will interpret the deed very strictly against the idea of a reversion. That's what all the cases say. The difficulty, you may want to speak to it or you may want us to decide without you having spoken to it, but this case was dismissed. The facts are pretty clear. The record is pretty clear. The case was dismissed. There was no opportunity to amend. That's all right if amendment would be futile. So somehow you ought to tell us why, in your view, it isn't so. And I gather you say because of the contract action. I gather that's — is that the basis? Is that what you're saying? There are two bases, Your Honor. All right. Number one, the contract action. And one of the things that Mr. Lewis didn't bring up in his argument was the language of the deed which specifically says that these properties are being transferred to the AGBU on condition of accepting as a personal obligation of the AGBU to maintain the school and to pay these sums off to the — to the — to the patriarch. And so there is — there is an obligation. It's in the deed. And whether it's contractual or trust, it's there. And the question is, what is the significance of that? And it's inappropriate for the district court to decide that issue first without seeing a pleading of a contract cause of action and, secondly, without taking any evidence or hearing anything about the significance of that language. The language is there, and it creates an obligation by the AGBU to do what it says it was going to do, which is to maintain the school. And the — the reason that the other cases, the other reason that the Texas Railway and the other cases cited by the — by the — by the appellee are not — are not relevant here is because most of those cases were also decided after the court had taken evidence and conducted a trial or some other fact-finding opportunity to determine what is the meaning of maintain, what is the meaning of — Kennedy, you know, we're not going to ignore the background of this case. You know why the school was located in Cyprus in the first instance. Of course. You know the situations that existed at the time, and you know the changes that have been made since that time. True, Your Honor. But if that were — We don't — we don't decide this as if we are living on laws. We've got to look at the case and look at all the facts. But if that — if that were the case, if the issue here were, well, we don't need an orphanage anymore because the political situation — Well, we don't know if they need it anymore, but we know what happened in 1926. Of course. But — And that was the deed of gift. But what — I guess what I'm saying is, look, they've operated the school for a substantial period of time. Eighty years. Eighty years. They have — they have done that. If they felt that there wasn't an obligation to do that, why have they continued to do that? And the point is that the — that the — that the obligation, as I said, is in the deed, the obligation to maintain the school. And it should not be for this Court to decide, without any kind of a factual record, about what the meaning of that obligation is, and just to throw that claim out. With a limited amount of time to present evidence to the trial court, a limited amount of time to make a pleading, the obligation is there. It's in the paper. And what the appellant would like is for the Court to allow it to attempt to enforce that obligation and reverse the district court's decision. Thank you. Thank you. The case just argued is submitted. Abercrombie and Fitch v. Moose Creek. Thank you.
judges: Farris, Gould, Cff, Duffy